**Michael J. COLARUSSO and Mary Colarusso, Debtors.**

**Mary M. Ragosa, Defendant/Appellant,**

v.

**Robert and Joan Canzano, Trustees of J & B Realty Trust, Plaintiffs/Appellees.**

BAP No. MB 02–039.
Bankruptcy No. 99–19194–WCH.
Adversary No. 01–1446.

United States Bankruptcy Appellate Panel of the First Circuit.

July 16, 2003.

Leonard A. Frisoli, Jr., Frisoli & Associates, Cambridge, MA, Albert J. Schulz, Osterville, MA, on brief for the Appellant.

Jay F. Thiese, Rubin and Rudman, LLP, Boston, MA, on brief for the Appellees.

Before VOTOLATO, BROWN, and KORNREICH, U.S. Bankruptcy Appellate Panel Judges.

BROWN, Bankruptcy Judge.

Mary M. Ragosa appeals the July 16, 2002, order of the United States Bankruptcy Court for the District of Massachusetts denying her motion for summary judgment and granting the motion for summary judgment filed by Robert and Joan Canzano in their capacity as the Trustees of the J & B Realty Trust (the "Canzano Trustees"), and seeks to overturn the bankruptcy court's approval of a sale of certain real estate to the Appellees, the Canzano Trustees, pursuant to 11 U.S.C. § 363.[1] For the reasons set forth below, we affirm.

### BACKGROUND AND PROCEDURAL HISTORY

On November 17, 1999, Michael J. Colarusso and Mary Colarusso (collectively, the "Debtors") filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code.[2] On March 15, 2000, the Debtors filed a motion to convert the case from Chapter 13 to Chapter 11, which the bankruptcy court granted that same day. On February 13, 2001, the Debtors moved to convert their Chapter 11 case to Chapter 7, and that motion was granted on March 7, 2001. As of the Petition Date, the Debtors owned certain real property located at 289 West Bay Road, Osterville, Massachusetts (the "Property").

On May 15, 2001, the Chapter 7 Trustee, Donald Lassman, filed a motion for an order pursuant to § 363(b)(1) and (f) authorizing and approving the private sale of the Property free and clear of all liens, claims and encumbrances (the "Sale Motion"). Contemporaneously, the Chapter 7 Trustee filed a Notice of Intended Private Sale, identifying four offers, all in the amount of $719,900, received for the Property. The Notice listed June 25, 2001 as the deadline by which to file any objections to the proposed sale. No objections were filed by the deadline.

Between June 25, 2001, and June 29, 2001, each of the four prospective purchasers submitted sealed bids increasing their prior offers. On June 29, 2001, the bankruptcy court held a hearing on the Sale Motion at which both Ragosa, as Trustee of the G.B.C. RE Trust, and the Canzano Trustees appeared and submitted their sealed counter bids. At the conclusion of that hearing, the bankruptcy court entered an order authorizing and approving the private sale of the Property to the Canzano Trustees free and clear of any liens, claims, charges, interests, and encumbrances (the "Sale Approval Order"). *See* Appellant's App. at 38. The Sale Approval Order also provided that if the Canzano Trustees failed to close, the Chapter 7 Trustee was authorized to complete the sale to Ragosa as Trustee the of G.B.C. RE Trust. *See id.* at 39. On July 2, 2001,

---

**1.** The bankruptcy court's Memorandum Decision is published. *See Canzano v. Ragosa (In re Colarusso)*, 280 B.R. 548 (Bankr.D.Mass. 2002). Although she disagrees with the bankruptcy court's ultimate conclusion, Ragosa takes no issue with the factual and procedural background set forth therein. Therefore, we have drawn certain background facts from the published decision for this opinion.

**2.** Unless otherwise indicated, all references to the "Bankruptcy Code" or the "Code" and all references to statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, *et seq.*

the Chapter 7 Trustee recorded a Trustee's Deed with an attached certified copy of the Sale Approval Order. On July 10, 2001, the Chapter 7 Trustee filed a Report of Chapter 7 Trustee on Sale of Real Property, disclosing that the Canzano Trustees had been the successful purchasers of the Property. Ragosa neither filed an appeal of the Sale Approval Order nor sought a stay of the Sale Approval Order pending appeal.

On October 23, 2001, Ragosa, as an individual and not as Trustee of the G.B.C. RE Trust, filed a complaint in the Land Court for the Commonwealth of Massachusetts (Case No.: 275638), seeking a declaratory judgment establishing a claim of ownership to a portion of the Property via adverse possession (the "Land Court Action"). In connection with the Land Court Action, Ragosa filed a *lis pendens,* creating a cloud on the Canzano Trustees' title to the Property. *See* Appellant's App. at 199.

On November 6, 2001, the Canzano Trustees commenced an adversary proceeding in the bankruptcy court (Adv. Pro. No.: 01–1446) seeking to enforce the Sale Approval Order and to enjoin Ragosa from proceeding with the Land Court Action (the "Adversary Proceeding"). In their Complaint, the Canzano Trustees argued, among other things, that because Ragosa participated in the sale of the Property as a bidder and did not object thereto, she was barred from prosecuting the Land Court Action under principles of judicial estoppel. On November 8, 2001, after a hearing, the bankruptcy court granted a preliminary injunction in favor of the Canzano Trustees enjoining Ragosa from:

> [T]aking any further action in the Land Court for the Commonwealth of Massachusetts in Case No. 275638 and from taking any and all other action with respect to the issue of title to a parcel of property popularly known as 289 West Bay Road, Osterville, Massachusetts, referred to as the locus in the above-captioned Complaint, until such further order of this Court.

*See* Appellant's App. at 102–03.

On November 30, 2001, Ragosa filed a Motion to Dismiss or Abstain with respect to the Adversary Proceeding. On that same date, Ragosa filed a Motion to Amend Order Granting Preliminary Injunction. In the motions, Ragosa argued, among other things, that she had acquired a portion of the Property via adverse possession (the "Adversely Acquired Property") and, consequently, that portion of the Property was never part of the Debtors' estate and could not have been included in the Sale Motion. Ragosa also argued that because the Adversely Acquired Property was never part of the bankruptcy estate, the bankruptcy court did not have jurisdiction over it, and Ragosa had no obligation to object to the sale. The Canzano Trustees filed an opposition to the motion to dismiss. The bankruptcy court held a hearing on the motion to dismiss and the motion to amend, and denied both motions. Thereafter, Ragosa filed an answer to the Adversary Proceeding complaint.

The Canzano Trustees filed a Motion for Summary Judgment, Or In the Alternative, Judgment on the Pleadings, Pursuant to Bankruptcy Rule 7056 and F.R.C.P. 56, and Ragosa filed her own Motion for Summary Judgment. After hearing oral argument on the cross motions for summary judgment, the bankruptcy court permitted the parties to file supplemental memoranda of law. On July 16, 2002, the bankruptcy court entered a Memorandum Decision and a separate Order granting the Canzano Trustees' summary judgment motion and denying Ragosa's summary judgment motion. Ragosa filed a timely Notice of Appeal from that Order.

## JURISDICTION

■ The Panel has jurisdiction to hear appeals from "final judgments, orders, and decrees" pursuant to 28 U.S.C. § 158(a)(1) or "with leave of the court, from interlocutory orders and decrees" pursuant to 28 U.S.C. § 158(a)(3). *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* at 646. An interlocutory order "'only decides some intervening matter pertaining to the cause, and which requires further steps to be taken in order to enable the court to adjudicate the cause on the merits.'" *Id.* (quoting *In re American Colonial Broad. Corp.*, 758 F.2d 794, 801 (1st Cir.1985)).

■ Generally, a bankruptcy court order denying a motion for summary judgment is not a final order. *See CRS Steam, Inc. v. Engineering Resources, Inc. (In re CRS Steam, Inc.)*, 233 B.R. 901 (1st Cir. BAP 1999). However, an order denying a party's motion for summary judgment that also grants an opposing party's cross-motion for summary judgment is a final order because it ends the litigation on the merits. *See generally Yamaha Motor Corp. v. Perry Hollow Mgmt. Co. (In re Perry Hollow Mgmt. Co.)*, 297 F.3d 34, 37 (1st Cir.2002); *Weiss v. Blue Cross/Blue Shield of Delaware (In re Head Injury Recovery Ctr. at Newark)*, 206 B.R. 622, 623 (1st Cir. BAP 1997); *see also DeNadai v. Preferred Capital Mkts.*, 272 B.R. 21 (D.Mass.2001).

## STANDARD OF REVIEW

■ Appellate courts reviewing an appeal from a bankruptcy court generally apply the clearly erroneous standard to findings of fact, and *de novo* review to conclusions of law. *See, e.g., Prebor v. Collins (In re I Don't Trust)*, 143 F.3d 1, 3

(1st Cir.1998); *Brandt v. Repco Printers & Lithographics, Inc. (In re Healthco Int'l, Inc.)*, 132 F.3d 104, 107 (1st Cir.1997); *TI Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir.1995).

■ Generally, orders granting summary judgment are reviewed *de novo*, construing the record in the light most favorable to the nonmovant and resolving all reasonable inferences in that party's favor. *See Gosselin v. Webb*, 242 F.3d 412 (1st Cir.2001) (citing *Landrau–Romero v. Banco Popular De Puerto Rico*, 212 F.3d 607, 611 (1st Cir.2000)); *see also Rijos v. Vizcaya (In re Rijos)*, 263 B.R. 382, 388 n. 5 (1st Cir. BAP 2001); *Campana v. Pilavis (In re Pilavis)*, 244 B.R. 173, 174 (1st Cir. BAP 2000). An order granting a party's motion for summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *See Pilavis*, 244 B.R. at 174–75; Fed.R.Civ.P. 56.

## ISSUES ON APPEAL

The Appellant raises three issues on this appeal: (1) whether the bankruptcy court erred in ruling that the Property could be sold free and clear of Ragosa's adverse possession claim pursuant to § 363(f) of the Bankruptcy Code; (2) whether the bankruptcy court erred in ruling that Ragosa was estopped from asserting her claim of adverse possession in the Land Court Action after the Chapter 7 Trustee's sale of the Property to the Canzano Trustees; and (3) whether the bankruptcy court should have abstained from hearing the Adversary Proceeding under the provisions of 28 U.S.C. § 1334(c)(1). *See Appellant's Brief at 2.*

## DISCUSSION

### I. Sale Free and Clear.

Ragosa has not asked us to review the Sale Approval Order. Acknowledging it to be final and no longer subject to appeal, she insists, instead, that it is a nullity as to her and her interest in a portion of the subject property. Ragosa has repeated on appeal the principal argument that she made in bankruptcy court: That the portion of the property in which she claims title by adverse possession did not become property of the estate; and, consequently, that property could not have been sold free and clear of her claim of title by the Chapter 7 Trustee. She also contends that her interest in the property was not an interest covered by the sale free and clear provision of § 363(f). Neither of these points was raised by Ragosa in the proceedings on the Chapter 7 Trustee's motion to sell, despite her appearance as the Trustee of the G.B.C. RE Trust.

Relying upon an expansive interpretation of "interest" as that word is used in § 363(f), and without discussing the nature and extent of either Ragosa's or the Debtors' interest under state law at the time of bankruptcy, the bankruptcy judge concluded that the Sale Approval Order was final and that the property had been lawfully transferred to the Canzano Trustees free and clear of whatever interest Ragosa may have had. On that basis he enjoined Ragosa from proceeding in the state court by awarding summary judgment to the Canzanos.

We agree with the result but believe we must begin our scrutiny of the applicability of the Sale Approval Order to Ragosa by examining the estate's interest in the property she claims to hold by adverse possession. We will then address Ragosa's argument that her "interest," by dint of her claim of title by adverse possession, is not an "interest in such property" within the meaning of § 363(f).

A bankruptcy trustee "may . . . sell . . . property of the estate." § 363(b). With certain exceptions and additions, a bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." § 541(a)(1). The Supreme Court has interpreted the phrase "property of the estate" as it appears in § 363(b) to be broad enough to include more than the precise character of the debtor's interest upon the commencement of the case.

> Subsections (b) and (c) of § 363 authorize the trustee to use, sell, or lease any "property of the estate," subject to certain conditions for the protection of creditors with an interest in the property. Section 541(a)(1) defines the "estate" as "comprised of all the following property, wherever located: (1) . . . all legal or equitable interests of the debtor in property as of the commencement of the case." Although these statutes could be read to limit the estate to those "interests of the debtor in property" at the time of the filing of the petition, we view them as a definition of what is included in the estate, rather than as a limitation.

*United States v. Whiting Pools, Inc.,* 462 U.S. 198, 203, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).

In *Whiting,* the IRS had lawfully seized personal property before the commencement of the bankruptcy case. The Court's expansive definition of property of the estate allowed the debtor in possession in *Whiting* to take possession of and use that personal property subject to the government's lien. The more restrictive definition urged by the government in that case would have limited the estate's interest to the debtor's non-possessory interest upon the commencement of the case. Such a

reading of the Code would have denied the Chapter 11 debtor the use of its property.

Although the present case is a Chapter 7 liquidation involving the sale of real estate by the Chapter 7 Trustee and not a Chapter 11 reorganization as in *Whiting*, the *Whiting* principle still holds. Subsections (b) and (c) of § 363 and (a)(1) of § 541 are to be viewed "as a definition of what is included in the estate, rather than as a limitation." *Id.* If the Debtors had an interest in the subject property upon the commencement of the case, that interest would have become property of the estate to be sold by the Chapter 7 Trustee.

The record is sparse on the nature and extent of the Debtors' interest in the property sold to the Canzano Trustees upon the commencement of the case, but it is undisputed that they held record title to the property in question at that time. The estate succeeded to that interest. The unanswered question, which was not before the bankruptcy judge at any time prior to the entry of the Sale Approval Order, is whether the Debtors' record title to the property in which Ragosa claims title by adverse possession was an interest within the broad *Whiting* definition which could have been sold under § 363(b). For the answer to that question we look to Massachusetts property law.

The current version of the Massachusetts adverse possession statute, which has not been changed during the applicable twenty year period in any way which would have an impact on the parties in this case, provides:

§ 21. *Recovery of Land*

An action for the recovery of land shall be commenced, or an entry made thereon, only within twenty years after the right of action or of entry first accrued, or within twenty years after the defendant or the person making the entry, or those under whom they claim,

have been seized or possessed of the premises; provided, however, that this section shall not bar an action by or on behalf of a nonprofit land conservation corporation or trust for the recovery of land or interests in land held for conservation, parks, recreation, water protection or wildlife protection purposes.

Mass. Gen. Laws Ann. ch. 260, § 21.

■■■ Acquisition of title through adverse possession is a fact to be proved by the one asserting title. *See Holmes v. Johnson,* 324 Mass. 450, 86 N.E.2d 924 (1949). An adverse possessor may bring an action to claim title. *See id.* (bill in equity to enjoin record owner from entering upon strip of land); *Kershaw v. Zecchini,* 342 Mass. 318, 173 N.E.2d 624 (1961) (bill for declaratory relief to establish title); *Rothery v. MacDonald,* 329 Mass. 238, 107 N.E.2d 432 (1952) (proceeding to register title). Or, it may be established by the adverse possessor on the affirmative defense of statute of limitations in an action commenced by the record owner. Often thought of as the minimum period for asserting title by adverse possession, the twenty year time frame is, in reality, the statute of limitations for disputing title by adverse possession. *See Lawrence v. Town of Concord,* 439 Mass. 416, 788 N.E.2d 546, 553 (2003); *Peck v. Bigelow,* 34 Mass.App.Ct. 551, 613 N.E.2d 134, *rev. den.,* 416 Mass. 1102, 618 N.E.2d 71 (1993) (record owner sued alleged adverse possessor for tortious interference with land purchase); *La Chance v. Rubashe,* 301 Mass. 488, 17 N.E.2d 685 (1938) (action by record owners to restrain adverse possessors from further trespass); *Stearns v. Hendersass,* 63 Mass. 497 (1852) (action by record owners for recovery of land); *see also* Mass. Gen. Laws Ann. ch. 240, § 1 (person in possession of land may compel adverse claimant to try title). After expiration of that period, a record own-

er may be barred from asserting title; however, like any other statute of limitations, the one contained in § 21 must be pled as an affirmative defense if it is to be an effective bar to an action. *See Castaline v. Swardlick,* 264 Mass. 481, 163 N.E. 62, 63 (1928).

Here, the estate succeeded to the Debtors' interest in the property claimed by Ragosa before she began her state court action to determine title. Consequently, the estate's interest upon the commencement of the bankruptcy case included the right to challenge Ragosa's claim, subject to the possibility of a statute of limitations defense.

It also appears that the Chapter 7 Trustee's ability to transfer the estate's interest in the property claimed by Ragosa would have been unhampered by her possession.

> A conveyance of land shall, if otherwise valid, notwithstanding disseisin or adverse possession, be as effectual to transfer the title of the grantor as if he were actually seized and possessed of such land, and shall vest in the grantee the rights of entry and of action for recovery of the estate incident to such title.

Mass. Gen. Laws Ann. ch. 183, § 7. *See also McLoud v. Mackie,* 175 Mass. 355, 56 N.E. 714, 715 (1900); *Sheehan Constr. Co. v. Dudley,* 299 Mass. 51, 12 N.E.2d 182 (1937).[3]

Applying Massachusetts law to the broad definition of property of the estate employed in *Whiting,* we conclude that the Debtors had an interest in the property claimed by Ragosa upon the commencement of the case which could have been sold by the Chapter 7 Trustee.

■ We now turn to Ragosa's argument that her claim of title by adverse possession, although an interest in property, is not an "interest" as that word is used in § 363(f) ("any interest in such property of an entity other than the estate ...."). She insists that § 363(f) covers only monetary interests in property like liens and mortgages. We reject this notion and adopt the analysis applied by the Court of Appeals in *In re 229 Main Street Ltd. P'ship,* 262 F.3d 1, 5–7 (1st Cir.2001) (holding that " 'interest in property,' as that term is used in 11 U.S.C. § 362(b)(3) is unequivalent to and broader than, the term 'lien.' "). The reasoning applied by the court in that case is equally applicable to § 363(f).

> Congress is familiar with the word "lien," and used that word frequently in drafting the Bankruptcy Code. E.g., 11 U.S.C. §§ 361(a), 364, 544(a), 545. It is an orthodox tenet of statutory construction that "where Congress includes particular language in one section of a statute, but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Duncan v. Walker,* 533 U.S. 167, 121 S.Ct. 2120, 2125, 150 L.Ed.2d 251 (2001) (quoting *Bates v. United States,* 522 U.S. 23, 29–30, 118 S.Ct. 285, 139 L.Ed.2d 215 (1997)).

*Id.* at 5–6. Following the Court of Appeals, we must assume that the failure to employ limiting language in § 363(f) was deliberate.

> We understand that statute to mean that an interest in property, as it stands, may be transferred by a record title holder "notwithstanding disseisin or adverse possession."

---

**3.** Our observation in this regard should not be understood to imply that we have concluded that Mass. Gen. Laws Ann. ch. 183, § 7 allows for the transfer of record title free and clear of a claim of title by adverse possession.

The phrase "any interest" in § 363(f) is meant to cover the same scope of interests for entities other than the estate as those encompassed in the definition of property of the estate. Consistent meanings should be applied to the same words throughout a unified statute like the Bankruptcy Code. *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002). Indeed, the range of interests under § 363(f) may be broader than under § 541(a)(1), because, unlike § 541(a)(1), § 363(f) has no exceptions. *See* § 541(b).

Obviously, Ragosa's aim in advocating a limited definition of "interest" in the § 363(f) context is motivated by her desire to find a safe harbor for her claim of title by adverse possession. But her claim, if it was an interest in property under Massachusetts law, would have had the benefit of the protections afforded all interest holders under that subsection. Property of an estate may not be sold free and clear of any interest under § 363(f) unless one of the five conditions is met.[4] Only one of these conditions, § 363(f)(3), relates specifically to liens. The other four treat all interests in property, including liens.

We need not determine whether or not Ragosa's claim of title by adverse possession is an interest in property under state law because the second condition for a sale free and clear has been met. Her failure to object to the sale, or to seek adequate protection under § 363(e), and her participation in the sale as a bidder for G.B.C. RE Trust was consent under § 363(f)(2).

*See In re Windmill Farms Mgmt. Co.*, 116 B.R. 755, 762 (Bankr.S.D.Cal.1990) (failure to object to bankruptcy court jurisdiction constitutes consent).

The Debtors' property was sold to the Canzano Trustees free and clear of Ragosa's interest, to the extent she had one. The bankruptcy court was correct in concluding that she is bound by the Sale Approval Order.

## II. Finality.

Ragosa argues that as she had acquired title to the Adversely Acquired Property via adverse possession, that portion of the Property was not property of the estate and, thus, not subject to sale by the Chapter 7 Trustee. Ragosa argues, therefore, that she had no obligation to object to the sale or to appeal the Sale Approval Order. The bankruptcy court rejected this argument, noting the effect of a final sale in bankruptcy under § 363(m).

■■■ Section 363 authorizes a bankruptcy trustee to sell a debtor's property outside of the ordinary course of business. Section 363(m) provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and

---

4. Section 363(f) provides:

> The trustee may sell property under subsection (b) or (c) of this section *free and clear of any interest in such property* of an entity other than the estate, only if—
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;

> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f) (emphasis added).

such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). Section 363(m) is a rule of finality designed to permit the sale of property in a bankruptcy estate to a good faith purchaser. The rule permits value to be provided to the estate while protecting the rights of purchasers. As the First Circuit has noted:

It has been held that 11 U.S.C. § 363(m) reflects the salutary policy of affording finality to judgments approving sales in bankruptcy by protecting good faith purchasers, the innocent third parties who rely on the finality of bankruptcy judgments in making their offers and bids.... The finality and reliability of the judicial sales enhance the value of the assets sold in bankruptcy.

*Anheuser–Busch, Inc. v. Miller (In re Stadium Management Corp.)*, 895 F.2d 845, 847 (1st Cir.1990) (citations omitted). Appellate courts have interpreted § 363(m) to prevent the reversal of a completed sale to a good faith third party purchaser in the absence of a stay of that sale. *Id.*[5]

■■ The bankruptcy court found that the Sale Motion "described the Property via a three page metes and bounds description which included the entire Property and did not exclude" that portion of the Property claimed by Ragosa by adverse possession. *Colarusso*, 280 B.R. at 557. The bankruptcy court concluded that Ragosa actively participated in the sale, was represented by counsel and did not appeal the Sale Approval Order or seek a stay of the sale pending appeal. *Colarusso*, 280 B.R. at 558. Therefore, the bankruptcy court concluded that the Canzano Trustees were good faith purchasers of the Property and that the sale was final. *Id.*

We agree. Ragosa had notice of and participated in the bankruptcy court proceedings which resulted in the sale of the Property. She failed to appeal the Sale Approval Order or obtain a stay of the sale pending appeal. If she had not had notice of the Sale Motion, she might have a cognizable due process claim. However, she did have notice and failed to raise the adverse possession claim in connection with the bankruptcy court's consideration of the Sale Motion. Nothing in the record suggests that the bankruptcy court or the Canzano Trustees had any knowledge of Ragosa's adverse possession claim prior to the entry of the Sale Approval Order and the transfer of title. Because the Property has been transferred to a bona fide third party purchaser, Ragosa's attempt to overturn the sale of the Property is barred by the principles of finality set forth in § 363(m). *See Stadium Management*, 895 F.2d at 847.

## III. Estoppel.

■■ Ragosa argues that she is not estopped from pursuing the Land Court Action because the Canzano Trustees failed to prove any detrimental reliance. The appellate court reviews an equitable estoppel ruling under a mixed standard, assessing the legal conclusion *de novo* and all factual findings for clear error. *See Noonan v. Secretary of HHS (In re Ludlow Hosp. Soc'y, Inc.)*, 124 F.3d 22, 25 n. 6 (1st Cir.1997).

■■ In Massachusetts, factors giving rise to a successful assertion of equitable estoppel include:

(1) a representation or conduct amounting to a representation intended to induce a course of conduct on the part of

---

**5.** As set forth in § 363(m), a stay is not required to challenge a sale on the grounds that the third party did not purchase in good faith.

However, Ragosa has not raised the Canzano Trustees' good faith as an issue on appeal.

the person to whom the representation is made; (2) an act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made; (3) and detriment to such person as a consequence of the act or omission.

*Boylston Dev. Group, Inc. v. 22 Boylston St. Corp.*, 412 Mass. 531, 591 N.E.2d 157 (1992) (quoting *Cellucci v. Sun Oil Co.*, 2 Mass.App.Ct. 722, 320 N.E.2d 919 (1974)); *see also Falcone v. Pierce*, 864 F.2d 226, 228 (1st Cir.1988); *Dunkin' Donuts, Inc. v. Panagakos*, 5 F.Supp.2d 57 (D.Mass. 1998) (quoting *Cellucci, supra*). The "conduct" giving rise to estoppel may consist of a party's representations, acts, or, where there exists a duty to speak, silence. See *Katahdin Fed. Credit Union v. Jamo (In re Jamo)*, 262 B.R. 159, 167 (1st Cir. BAP 2001), *rev'd on other grounds*, 283 F.3d 392 (1st Cir.2002).

> Equitable estoppel, in the modern sense, arises from the *conduct* of a party, using that word in its broadest meaning as including his spoken or written words, his positive acts, and his silence or negative omission to do anything. Its foundation is justice and good conscience. Its object is to prevent the unconscientious and inequitable assertion or enforcement of claims or rights which might have existed or been enforceable by other rules of the law unless prevented by the estoppel; and its practical effect is, from motives of equity and fair dealing, to create and vest opposing rights in the party who obtains the benefit of the estoppel.

*Id.* (citations omitted) (emphasis added).

█ In the present case, the bankruptcy court, applying the applicable legal standard, found:

> [Ragosa] deliberately failed to object throughout the sale proceedings in which she was an active participant.

Her conduct induced the other parties to the transaction to reasonably rely on the finality of the proceedings and thus precludes her from claiming any right to the property subsequent to the entry of the [Sale Approval] Order. [Ragosa]'s conduct clearly demonstrated her intent to bid on the entire Property and pay for the purchase of the entire Property had she been deemed the successful bidder. Based on an inquiry on all of the facts of the case, I hold that [Ragosa]'s actions do constitute a waiver of her rights to object to the sale subsequent to the transfer of the property to the [Canzano Trustees].

> The [Canzano Trustees] relied on [Ragosa]'s waiver in bidding on the entire Property and they were deemed the successful bidder. Based on this waiver, they paid their final bid price to the Trustee and took possession of the Property. It would be detrimental to them for loose part of what they paid for based on [Ragosa]'s failure to act. As such, all of the elements of estoppel are satisfied and I am ruling that [Ragosa]'s waiver has become irrevocable.

*Colarusso*, 280 B.R. at 560.

Based on our review of the record, this Panel cannot find that the bankruptcy court erred in finding that Ragosa is estopped from claiming any right to the Property subsequent to the entry of the Sale Approval Order. Indeed, the record reflects that there is ample evidence to support such a finding, and that the bankruptcy court gave careful consideration to the evidence on this issue.

## IV. Bankruptcy Court Jurisdiction and Abstention.

Ragosa argues that the bankruptcy court, under 28 U.S.C. § 1334(c)(1), should have abstained from hearing the Adversary Proceeding because it did not have

jurisdiction over the Adversely Acquired Property.

■ Pursuant to 28 U.S.C. § 157(b)(1), bankruptcy courts "may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." At issue in this Adversary Proceeding was the validity of the Sale Approval Order. The First Circuit has ruled that such an order is a proceeding arising under, arising in or related to a case under title 11, stating:

> The underlying dispute here involves a subsequent purchaser's interpretation of a sale order "free and clear of liens" under 11 U.S.C. § 363(b), an order that can only be issued by a bankruptcy court, and so it is one that arises in a case under title 11 or perhaps arises under title 11.

*New Eng. Power & Marine, Inc. v. Town of Tyngsborough (In re Middlesex Power Equip. & Marine, Inc.)*, 292 F.3d 61, 68 (1st Cir.2002). Therefore, the bankruptcy court had concurrent, but not exclusive, jurisdiction over this matter. As such, the matter was subject to the abstention provisions of 28 U.S.C. § 1334(c).

■ Discretionary or permissive abstention is governed by 28 U.S.C. § 1334(c)(1), which provides that:

> Nothing in this section prevents a district court in the interest of justice or in the interest of comity with state courts or respect for state law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1). Courts have broad discretion to abstain from hearing state law claims whenever appropriate "in the

interest of justice, or in the interest of comity with State courts or respect for State law." *New Eng. Power*, 292 F.3d at 69. Therefore, appellate courts generally review a bankruptcy court's decision regarding permissive abstention for abuse of discretion. *Id.*

The statute specifically identifies three factors to determine whether abstention is appropriate: the interests of justice, comity and respect for state law. *Id.* Other circuits have considered several factors in determining whether permissive abstention is appropriate, including: the extent to which state law issues predominate over bankruptcy issues; the presence of a related proceeding commenced in state court or other nonbankruptcy court; and the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties. *Id.*

■ In the present case, the bankruptcy court decided not to abstain from considering the Adversary Proceeding. In reaching its conclusion, the bankruptcy court first noted that Ragosa's sole argument in favor of abstention was that the bankruptcy court did not have jurisdiction over this matter. *Colarusso*, 280 B.R. at 555. As noted above, the bankruptcy court did have jurisdiction. The bankruptcy court then noted that, because the Sale Approval Order was a bankruptcy court's sale order, it was an issue of federal law and that factor weighed against abstention. *Id.* Moreover, the bankruptcy court noted that the Land Court Action had not yet been heard and, thus, the factors of judicial economy and comity also weighed against abstention. *Id.*

Upon our review of the bankruptcy court's conclusions, we find that the bankruptcy court properly considered the relevant criteria in its decision and, therefore, did not abuse its discretion in deciding not to abstain from considering the summary

judgment motions in the Adversary Proceeding.

### CONCLUSION

Accordingly, the bankruptcy court's July 16, 2002 Order denying Ragosa's motion for summary judgment and granting the motion for summary judgment filed by the Canzano Trustees is AFFIRMED.

### *JUDGMENT*

This cause came to be heard from the United States Bankruptcy Court for the District of Massachusetts.

Upon consideration whereof, and in accordance with the Opinion entered on July 16, 2003, it is now hereby **ORDERED AND ADJUDGED** that the July 16, 2002 Order of the Bankruptcy Court denying Mary M. Ragosa's motion for summary judgment and granting the motion for summary judgment filed by Robert and Joan Canzano, Trustees of J & B Realty Trust, is hereby **AFFIRMED.**