723 F.2d 150
 SECURITY TITLE AND GUARANTY COMPANY, Plaintiff, Appellee,
v.
MID-CAPE REALTY, INC., and Ray Stewart, Defendants, Appellees,
and
Louis HANDLER, Defendant and Third-Party Plaintiff, Appellant,
v.
Robert D. HALL, Third-Party Defendant and Fourth-Party
Plaintiff, Appellee,
v.
The INSURANCE COMPANY OF the STATE OF PENNSYLVANIA,
Fourth-Party Defendant, Appellee.
SECURITY TITLE & GUARANTY COMPANY, David Hoerle, HDH
Investment Corporation, & Harwich Associates, Appellants,
v.
MID-CAPE REALTY, INC., and Ray Stewart, Defendants, Appellees,
and
Louis HANDLER, Defendant and Third-Party Plaintiff, Appellee,
v.
Robert D. HALL, Third-Party Defendant and Fourth-Party
Plaintiff, Appellee,
v.
The INSURANCE COMPANY OF the STATE OF PENNSYLVANIA,
Fourth-Party Defendant, Appellee.
 Nos. 82-1482, 82-1531.
 United States Court of Appeals,
First Circuit.
 Argued June 7, 1983.
Decided Dec. 14, 1983.
 
 1
 Erik Lund, with whom and Posternak, Blankstein & Lund, Boston, Mass., was on brief, for Sec. Title & Guaranty Co.
 
 
 2
 Daniel F. Featherston, Jr., Boston, Mass., for Louis Handler.
 
 
 3
 Paul W. Goodrich, Boston, Mass., with whom D. Alice Olsen, Paul S. Grand, and Morrison, Mahoney & Miller, Boston, Mass., were on brief, for Robert D. Hall.
 
 
 4
 Before COFFIN and BREYER, Circuit Judges, and SKINNER,* District Judge.
 
 
 5
 SKINNER, District Judge.
 
 
 6
 This action arises out of a dispute concerning land in Harwich, Massachusetts which was at one time owned by Susan Underwood.
 
 
 7
 The following chronology is drawn from the findings of the district judge, which we deem supported by the evidence. On October 15, 1917, Susan Underwood sold the six-acre lot to Clarence Burgess. This transaction, which is the first link of one of two purported chains of title, was recorded on November 3, 1926, but the deed did not correctly describe the lot because one of the courses was reversed. Burgess subsequently conveyed title to various members of the Rose family. Reginald Rose conveyed the property to Elizabeth Marsh on May 31, 1972 for $22,000. The description of the land in Marsh's deed is the same as the one in the original deed to Burgess.
 
 
 8
 The second purported chain of title begins with the death of Susan Underwood. Eleanor Underwood Mahoney, a residual devisee of Susan Underwood, believed that she had inherited the lot even though the inventory of assets filed in connection with the probate of Susan Underwood's will indicated that she owned no real estate at the time of her death. In August, 1967, Mahoney made a new plan of the lot; this plan became the basis for a subsequent deed description which was correct.
 
 
 9
 On March 24, 1972, Louis Handler, the owner of land abutting the lot, paid Mahoney $2,300 for the property. Robert Hall, Handler's attorney, attempted to obtain an abstract of the property for Handler, but, after having some difficulty, suggested that Handler obtain a title examiner or another attorney for the task. After further discussion with Hall, Handler applied to a local bank for a mortgage loan. The bank employed its attorney, Alan T. Hunt, to search the title. Mr. Hunt searched the property and informed the bank that the title was sufficient to serve as security for a mortgage. Hunt did not have a physical copy of any deed and began his search with the 1917 deed from Underwood to Burgess. The bank approved the mortgage, and Handler paid Hunt for his services even though Hunt was employed by the bank.
 
 
 10
 On June 20, 1973, Handler conveyed the disputed plot and some adjoining land to David Hoerle for $104,000 by a quitclaim deed. Hoerle obtained title insurance from the plaintiff, Security Title & Guaranty Co. ("Security"). Both Hoerle and Security retained Attorney Peter Dow Campbell to certify the title and to represent their interests in the transaction. Campbell secured the services of Attorney Ray Stewart to prepare an abstract of title, and on the basis of Stewart's abstract, gave an opinion that Handler could convey a marketable title. Attorney Hall represented Handler in the transaction but he was never retained by anyone to examine the title.
 
 
 11
 Sometime before the sale to Hoerle, Marsh learned of the proposed transaction. As a result, she retained an attorney, Oscar Cahoon, to protect her interests. Cahoon wrote a letter on May 9, 1973 to Mid-Cape Realty, the realtor attempting to sell the property for Handler, asserting that Marsh was the true owner of the property. He included the record reference of the Marsh deed in his letter by book and page, and sent copies of the letters to Handler, Hall and Marsh. Marsh also made her claim personally to Mid-Cape. Subsequently, a partner of Mid-Cape, John Collins, told Hoerle that a "crazy woman" had come to the office and made a claim to the property. Hoerle reported this conversation to Campbell.
 
 
 12
 On May 22, 1973, Hall responded to the Cahoon letter by denying the Marsh claim. He asserted that he was familiar with the history of Hoerle's title and he pointed out that Hunt had certified the title for mortgage purposes.
 
 
 13
 Sometime before the closing of the Handler-Hoerle sale, Campbell spoke with Hall and mentioned the claim reported to him by Hoerle. Hall said that he was aware of the claim, but he did not show Campbell the Cahoon letter nor did he give Campbell the title reference contained in Cahoon's letter. In response to Campbell's question, Hall said that he could not give a firm opinion because he had not checked the title but that he thought Marsh's claim was probably worthless because Hunt had certified the title for mortgage purposes. Hall also mentioned that his father, Gershon Hall, also an attorney, had investigated an adverse claim by Reginald Rose on behalf of Mahoney and decided that Mahoney's title was good. In this conversation, Marsh was not identified by name and Reginald Rose was not identified as Marsh's grantor.
 
 
 14
 Campbell did nothing further to investigate the purported claim of the "crazy woman". He certified the title to Hoerle and Security on the basis of Stewart's abstract, which did not pick up the deed from Underwood to Burgess.
 
 
 15
 After the closing on June 20, 1973, Attorney Cahoon reasserted the Marsh claim to the land and furnished Campbell with his own title abstract. As a result, Security and the Hoerle interests employed an independent title examiner. This examiner concluded that Marsh had a superior claim to the lot originally owned by Underwood. Security then negotiated a $30,000 settlement with Marsh, which was paid by equal contributions made by Security and the Insurance Company of Pennsylvania ("INCOPA"), Campbell's malpractice insurer.
 
 
 16
 The plaintiff, Security, commenced this action on May 8, 1975. Security's complaint named Elizabeth D. Marsh, David Hoerle (including several entities associated with Hoerle), Louis Handler, Mid-Cape Realty, and Ray Stewart. Security sought a declaratory judgment to adjudicate title, damages from Handler and Mid-Cape Realty for deceit and fraudulent concealment of an adverse claim, and damages from Stewart for negligence. Hoerle and his interests filed a crossclaim against Handler and Mid-Cape alleging fraud and unjust enrichment. As a result of a settlement, Marsh, Hoerle and the Hoerle interests were dismissed from the case as defendants, although Hoerle and the Hoerle interests remained as crossclaimants. Handler then filed a third-party complaint against Robert D. Hall and Alan T. Hunt which sought damages for malpractice. Hall then brought a fourth-party action against INCOPA to obtain its protection from the Handler claim. After trial, a voluntary dismissal was entered as to Hunt. Mid-Cape Realty never made an appearance, and Security voluntarily dismissed the claim against Stewart.
 
 
 17
 The district court judge held that Elizabeth Marsh possessed a valid title to the disputed land through June, 1973. He also held that Security and the Hoerle interests failed to prove their claim of fraudulent misrepresentation and deceit against Handler and Mid-Cape Realty. In addition, he rejected Hoerle's claim of unjust enrichment and Handler's malpractice claim against Hall. Since he rejected the malpractice claim, he did not reach Hall's claim against INCOPA. Security and Handler appeal.
 
 
 18
 On appeal. Security contends only that the district court judge erred in denying its claim of unjust enrichment. Handler contends that the district court judge erred in rejecting its claim that he suffered damage as a result of Hall's negligence.
 
 
 19
 In arriving at his judgment, the district judge made several critical findings of fact:
 
 
 20
 1. That title to the property prior to the ultimate settlement was in Marsh;
 
 
 21
 2. That Handler and Hall both believed that Handler's title was good on the basis of Hunt's examination;
 
 
 22
 3. That Campbell was negligent in not further investigating the alleged adverse claim of title.
 
 
 23
 As to the first two findings of fact, we find them to be not plainly wrong, but on the contrary, well supported by the evidence.[1] Similarly, we see no reason to overturn the finding of Campbell's negligence, and, indeed, it seems to us that Campbell is chargeable not only with failure to pursue the alleged claim but with the failure of his abstracter, Stewart, to pick up the deed from Underwood to Burgess.
 
 
 24
 The district judge made another finding, however, which we do not find to be supported by the evidence. He found in effect that Hoerle and Campbell knew at least as much as Handler knew about the adverse claim. The evidence is that neither Hoerle nor Campbell knew the name of the claimant, knew that the claim was asserted by a well-known local attorney, or knew that the claim was supported by reference to a specific deed by book and page. We think these attributes of the claim make it far more respectable than a report of an unnamed woman who was supposed to have made an oral claim to a real estate agent. We disagree with the district judge's finding that the adverse claim only became respectable after the closing, when Attorney Cahoon wrote the corporate purchaser, Hoerle's nominee, again asserting Marsh's claim.
 
 
 25
 The basic question in this case is whether Handler owed a duty to Hoerle to give this additional information to him or to his attorney, Campbell. The district court assumed, as do we, that the plaintiff Security was properly subrogated to whatever claims Hoerle may have.
 
 
 26
 Plaintiff relies on M.G.L. c. 184, Sec. 21:
 
 
 27
 If real property upon which an encumbrance exists is conveyed by deed or mortgage, the grantor, in whatever capacity he may act, shall before the consideration is paid, by exception in the deed or otherwise make known to the grantee the existence and nature of such prior encumbrance so far as he has knowledge thereof.
 
 
 28
 In asserting that Marsh's claim was an encumbrance, however, plaintiff's counsel misreads Prescott v. Trueman, 4 Mass. 627, 629 (1808). That case holds that "every right to, or interest in land, the land granted, to the diminution of the value of the land, but consistent with the passing of the fee of it by the conveyance, must be deemed by law an encumbrance. We say consistent with the passing of the fee of the land by conveyance, because if nothing passed by the deed, the grantee can not hold the estate under the grantor." [Emphasis supplied.] 4 Mass. at 629-630. In that case the grantor held by conveyance from a disseisor. Although he held a conveyable fee, it was subject to paramount right in the heirs of the disseisee to recover seisin by right of entry. In this case, Handler had no fee, indeed no interest in the land at all. The title of his grantor, Mahoney, was imaginary. In the court's words, "nothing passed by [Handler's] deed". The paramount title of Marsh was inconsistent with the passing of the fee by Handler. It was not, therefore, an encumbrance. This view is in accord with that of the preeminent Massachusetts authority on real estate title. Crocker's Notes on Common Forms, 7th Ed. (Swaim), 1955, Sec. 139. M.G.L., c. 184, Sec. 21 accordingly does not apply to this case.
 
 
 29
 We find no other authority for imposing on the seller or his attorney a duty to disclose in the circumstances revealed by this record.[2] We might have concluded that consistently with the trend in related fields of the law[3] the Massachusetts court would impose a duty of full disclosure of known title problems if it were not for the recent case of Nei v. Burley, 388 Mass. 307, 310, 446 N.E.2d 674 (1983). In that case the Supreme Judicial Court held that there was no obligation on the part of a seller to disclose the existence of a seasonal watercourse on the lands, particularly when the information was discoverable by the exercise of due diligence on the part of the buyer. The court found that the seller was not engaged in the trade or business of selling real estate and therefore the transaction was not governed by M.G.L. c. 93A.[4] If the court would not imply a duty of disclosure with respect to physical characteristics of the land, there is no reason to suppose that the court would impose a duty to disclose defects in the title other than as required by M.G.L., c. 184, Sec. 21 or M.G.L. c. 93A and the regulations issued thereunder.
 
 
 30
 This leads to the arguably anomalous result that the seller must disclose known encumbrances under the statute but need not disclose a known colorable claim that the seller has no title at all. On the other hand, the anomaly is minimized by Massachusetts' comprehensive title recording system, which we suppose would fully justify placing the risk of failure of record title squarely on a buyer. In any case, our duty as a federal court is to apply what we perceive to be Massachusetts law, not to rationalize it.
 
 
 31
 Since we conclude that Handler and Hall had no duty whatsoever to disclose Marsh's claim, we need not consider the sufficiency of their partial disclosure. We agree with the district court that the plaintiff has not established a case of unjust enrichment because there was no violation of any duty owed to Hoerle by Handler and Hall.
 
 
 32
 The district court concluded that Handler had not satisfied his burden of proving malpractice by Hall. Again we agree. Even if Handler's second guessing of Hall's handling of the matter were correct, we are at a loss to determine how Handler would have been served by Hall in effect "blowing the whistle" on the pending sale.
 
 
 33
 Accordingly, the judgment of the district court is affirmed.
 
 
 
 *
 Of the District of Massachusetts, sitting by designation
 
 
 [1]
 The subsidiary findings on page 6 of the district judge's opinion exhibits some confusion with respect to names and appears to lead to a result contradictory to his ultimate finding. We have resolved the problem by reference to the transcript of evidence
 
 
 [2]
 But cf. Burns v. Dockray, 156 Mass. 135, 137, 30 N.E. 551 (1892)
 
 
 [3]
 E.g., M.G.L. c. 93A, Sec. 2; 940 Code Mass.Regs. Sec. 3.16(2) (1978); Debral Realty, Inc. v. DiChiara, 383 Mass. 559, ---, 420 N.E.2d 343, 348 (1981)
 
 
 [4]
 No claim under c. 93A was pleaded or argued in the present case, nor in the light of Nei v. Burley, supra, should it have been. Handler was in the automobile parts business and the purported sale was an isolated transaction