382 F.3d 51
 In re Michael J. COLARUSSO; Mary Colarusso, Debtors,
Robert Canzano, Trustee of the J & B Realty Trust; Joan Canzano, Trustee of the J & B Realty Trust, Plaintiffs-Appellees,
v.
Mary M. Ragosa, Defendant-Appellant.
 No. 03-9010.
 United States Court of Appeals, First Circuit.
 Heard April 8, 2004.
 Decided September 2, 2004.
 
 Appeal from the Bankruptcy Appellate Panel, Brown, J. COPYRIGHT MATERIAL OMITTED Albert J. Schulz, with whom Leonard A. Frisoli was on brief, for appellant.
 Jay F. Theise, for appellees.
 Before TORRUELLA, Circuit Judge, JOHN R. GIBSON,* Senior Circuit Judge, and LIPEZ, Circuit Judge.
 JOHN R. GIBSON, Senior Circuit Judge.
 
 
 1
 Mary M. Ragosa appeals from an order of the bankruptcy court granting summary judgment to Robert and Joan Canzano. The Canzanos, acting as trustees, purchased a parcel of real estate at 289 West Bay Road in Osterville, Massachusetts, from the trustee in bankruptcy for Michael J. and Mary Colarusso, who held legal title to the property. Ragosa brought suit in the Land Court for the Commonwealth of Massachusetts, seeking to establish her claim of ownership of a portion of the 289 West Bay Road property by adverse possession. The Canzanos commenced this adversary proceeding in the bankruptcy court to enforce the bankruptcy court's order approving the sale of the property and to enjoin Ragosa from proceeding with her Land Court action. The bankruptcy court granted the Canzanos' motion for summary judgment and denied Ragosa's motion for summary judgment. Ragosa appealed to the Bankruptcy Appellate Panel, which affirmed. Ragosa contends that the bankruptcy court should have abstained from hearing this case, that the court should never have included the disputed parcel in the bankruptcy estate, and that the disputed parcel could not be sold free and clear of her interest. We affirm.
 
 I.
 
 2
 The entire property at 289 West Bay Road in Osterville, Massachusetts, including the parcel now being disputed, was deeded to Michael and Mary Colarusso in 1992. On November 17, 1999, the Colarussos filed a petition for relief under Chapter 13 of the United States Bankruptcy Code.[1] When the Colarussos filed their petition, they held record title to the entire tract.
 
 
 3
 During the bankruptcy proceedings, the Chapter 7 Trustee listed the property at 289 West Bay Road for public sale. The Trustee received offers of $719,900 from four sources, including one from Mary Ragosa and one from Joan and Robert Canzano. Both the Canzanos and Ragosa were neighbors of the Debtors, each owning real estate that abutted 289 West Bay Road. Ragosa bid as trustee of the G.B.C. RE Trust and the Canzanos bid as trustees for J & B Realty Trust. To submit a bid, the Bankruptcy Trustee requested that each offeror sign the same purchase and sale agreement. The rider to the agreement stated that the sale would be "free and clear of all liens, encumbrances, and interests pursuant to Bankruptcy Code Section 363(f)."[2]
 
 
 4
 The Bankruptcy Trustee filed a Motion Seeking Approval for a Private Sale, proposing that the bankruptcy court hold a sealed bid auction at which the four offerors would be allowed to bid. The highest offer for the property would win the auction. The sale motion specifically described the land to be sold, stating:
 
 
 5
 The legal description for the Property is contained in the Standard Form Purchase and Sale Agreement that is attached hereto as Exhibit `A' and is also set forth on the original deed into the Debtors and attached hereto as Exhibit `B'.
 
 
 6
 (emphasis in original.) Both the purchase and sale agreement and the original deed used a metes and bounds description of the property that included the disputed parcel.
 
 
 7
 The Trustee's sale motion sought to sell the property "free and clear of all liens, claims and encumbrances" under 11 U.S.C. § 363(b)(1) & (f). The sale motion specifically stated, "The prospective buyers listed above have no connection with the Debtor or the creditors or parties in interest in this bankruptcy proceeding except that the husband of Mary Rigosa [sic] ... is listed as a disputed creditor of the Debtors on Schedule F in the amount of $50,000.00."[3] It said that the property was "presently occupied by the Debtors" and that each of the "prospective buyers is aware of the Debtors['] occupancy and the end thereof."
 
 
 8
 The Trustee contemporaneously issued a Notice of Intended Private Sale that named Ragosa as one of the potential buyers. Like the motion, it stated that the property at 289 West Bay Road was to be sold free and clear of all liens, claims and encumbrances. The sale notice imposed a June 25, 2001, deadline for filing objections and higher offers. The sale notice set June 29, 2001, as the date for the hearing, during which any objections would be heard and, if possible, the property would be sold. No objections were filed by the deadline.
 
 
 9
 After the objection deadline had passed, the four potential purchasers submitted sealed bids. The bankruptcy court held the hearing as scheduled. Ragosa was represented by counsel and personally attended the hearing. However, the Canzanos' bid for the property was the highest. The bankruptcy court issued an order approving the sale of the property to the Canzanos on the terms proposed by the Trustee, namely by the description contained in the sale motion and "free and clear of any and all liens, claims and encumbrances on the property." The court found that the Canzanos had acted in "good faith, at arm's length, and without collusion, and are therefore purchasers in good faith within the meaning of 11 U.S.C. Section 363(m)." The court directed the trustee to transfer the property to the Canzanos. Because Ragosa was the second-highest bidder, the sale order specified that if the Canzanos failed to close, the Trustee was authorized to complete the sale to Ragosa.
 
 
 10
 The Canzanos did close, and on July 2, 2001, the trustee delivered the deed to the entire property at 289 West Bay Road to the Canzanos. Ragosa did not appeal from the sale order or file a motion to stay the sale pending appeal. Instead, on October 23, 2001, Ragosa filed suit in the Land Court Department of the Massachusetts Trial Court, seeking a declaratory judgment establishing her title by adverse possession to a 1,500 square foot parcel of 289 West Bay Road. Ragosa alleged that the disputed parcel was physically separated from the rest of 289 West Bay Road by a row of stones and a hedge, and that from 1956 until August 2001 she and her predecessor in interest had used the area exclusively to park cars and store boats and rubbish containers. Ragosa obtained, ex parte, a lis pendens, clouding the Canzanos' title to the property. Two weeks later, the Canzanos filed suit in bankruptcy court, seeking specific enforcement of the sale order and a preliminary injunction restraining Ragosa from advancing her claim in the Land Court. The Canzanos argued, inter alia, that because Ragosa participated in the bankruptcy sale as a bidder, had notice of the property being sold, and did not object, she was now estopped from asserting an ownership interest in the land.
 
 
 11
 The bankruptcy court held a hearing on November 8, 2001, attended by lawyers for the Canzanos, the Debtors, Ragosa, and the Chapter 7 Trustee. At the hearing, the Debtors' attorney, Mr. McAuliffe, stated that he had actual knowledge and could testify that before the sale of the property to the Canzanos, the Ragosas had been fighting with the Debtors over the parcel, that Mr. Colarusso had posted no trespassing signs, and that counsel for the Debtors and the Ragosas had discussed whether the Ragosas would waive their claim against the Debtors if the Debtors would give them greater rights in the property.[4]
 
 
 12
 After hearing arguments from both parties, the court preliminarily enjoined Ragosa from prosecuting the Land Court Action. The court addressed Ragosa's participation in the bidding process:
 
 
 13
 Your client was here and did not object. Your client did not stand up before the Trustee sold the property and [say], "Wait a minute. Anything you sell, you're trying to sell by this metes and bounds description, my client owns a piece of the property within that metes and bounds description by adverse possession.". . .
 
 
 14
 You cannot do now what you should have done then, when others have relied upon your silence, your clients' silence, to their detriment, as they have done in this case ....
 
 
 15
 The Canzanos purchased the piece of property from this estate by a metes and bounds description, by an order of mine which said they were good faith purchasers buying free of all liens and encumbrances and whatever—whatever the Trustee purported to sell, if your client didn't think the Trustee had any right to see it, your client should have spoken up. Indeed, your client bid on the property, and why should they spend money for that which they already own?
 
 
 16
 So certainly they could—had your client wished to press the adverse possession argument, I think they should have objected to the sale ... I won't let you do it now. I believe you are estopped by your prior lack of objection to the sale process to continue now.
 
 
 17
 Ragosa then filed a motion to dismiss the bankruptcy court action for failure to state a claim or to abstain because the court lacked jurisdiction. She also filed a motion to amend the preliminary injunction to prevent the Canzanos from doing construction work on the disputed parcel. After the bankruptcy court denied those motions, the parties filed opposing motions for summary judgment pursuant to Bankruptcy Rule 7056. The bankruptcy court granted the Canzanos' summary judgment motion and denied Ragosa's. Canzano v. Ragosa (In re Colarusso), 280 B.R. 548 (Bankr.D.Mass.2002).
 
 
 18
 Ragosa appealed to the Bankruptcy Appellate Panel, which affirmed the judgment of the bankruptcy court. Canzano v. Ragosa (In re Colarusso), 295 B.R. 166 (B.A.P. 1st Cir.2003). Ragosa then appealed to this court, arguing that the bankruptcy court should have abstained from hearing the case, that the court erred in including the property in the bankruptcy estate and then selling the disputed parcel free and clear, and that the court erred in ruling she was estopped from asserting her adverse possession claim.
 
 II.
 
 19
 Ragosa first argues that the bankruptcy court should have abstained from hearing this case under 28 U.S.C. § 1334(c)(1) (2000), which governs permissive abstention in bankruptcy cases. Under section 1134(c)(1), a bankruptcy court that has subject matter jurisdiction may nevertheless abstain from hearing a case "in the interest of justice, or in the interest of comity with State courts or respect for State law." Beyond these three factors enumerated in the statute itself, courts have also looked to factors such as the extent to which state law issues predominate over bankruptcy issues, the presence of a related proceeding commenced in state court, and the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the litigants. New England Power & Marine, Inc. v. Town of Tyngsborough (In re Middlesex Power Equip. & Marine, Inc.), 292 F.3d 61, 69 (1st Cir.2002). We review the bankruptcy court's permissive abstention decision for abuse of discretion. New England Power, 292 F.3d at 69.
 
 
 20
 The bankruptcy court declined to abstain because Ragosa's sole argument for abstention was that the court lacked jurisdiction, and the bankruptcy court held that it did have jurisdiction. The bankruptcy court held that the Canzanos' suit required the court to determine the validity and scope of its previous order to sell 289 West Bay Road, including the disputed parcel; therefore, the court had jurisdiction over the matter as one arising in or under a Title 11 case. See New England Power, 292 F.3d at 67-68. The bankruptcy court also found that the Canzanos' suit did not threaten judicial economy and comity since the Land Court Action had not yet been heard. The court also noted that the validity of the sale order was an issue of federal law.
 
 
 21
 Ragosa argues that abstention is appropriate because state law issues predominate and because she has a pending state lawsuit to resolve her state law claim. She also contends that resolution of her Land Court proceeding will have a "beneficial impact" on the "efficient administration of the estate." Ragosa fails to explain how the bankruptcy court's abstention and the Land Court's adjudication of the adverse possession claim would have a beneficial impact on the administration of the estate, and it is not immediately apparent to us.
 
 
 22
 We are similarly unpersuaded by her other arguments. "The scope of the bankruptcy court's sale order under the Code is an issue of federal law" that weighs against abstention. New England Power, 292 F.3d at 69. The state law issues, such as whether Ragosa has acquired an interest in the disputed parcel by adverse possession, cannot be said to "predominate," as Ragosa claims. Moreover, the state law issues are governed by well-settled Massachusetts law, which also weighs against abstention. See In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co., 6 F.3d 1184, 1189 & n. 8 (7th Cir.1993) (noting significance of existence of unsettled issues of state law as a factor favoring abstention; if state law is settled, the bankruptcy court is qualified to decide the issue).
 
 
 23
 Finally, there is little damage to judicial economy from interference with a state suit that had been pending for a mere two weeks when the federal suit was filed. See id. at 1193. To the contrary, judicial economy will be served by the bankruptcy court's adjudication of this case, as it is already familiar with the property at issue, the parties, and their conduct in the prior proceeding. Considering that "federal courts generally should exercise their jurisdiction if properly conferred and that abstention is the exception rather than the rule," id. at 1189, we hold that the district court did not abuse its discretion in refusing to abstain.
 
 III.
 
 24
 We turn to the merits of the bankruptcy court's grant of summary judgment to the Canzanos.
 
 
 25
 A bankruptcy court's order granting or denying summary judgment is reviewed de novo. In re Varrasso, 37 F.3d 760, 763 (1st Cir.1994). In bankruptcy proceedings, Federal Rule of Bankruptcy Procedure 7056 incorporates the standards of Federal Rule of Civil Procedure 56. Thus, a motion for summary judgment should be granted only when there are no genuine issues of material fact and when the moving party is entitled to summary judgment as a matter of law. Fed. R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
 
 A.
 
 26
 Ragosa first argues that the disputed parcel was never part of the bankruptcy estate because she had already obtained good title in the parcel by adverse possession. Ragosa cites the principle that "adverse possession of real estate for the period prescribed in the statute of limitations not only bars a suit to recover it, but gives good title against the former owner." Daley v. Daley, 308 Mass. 293, 32 N.E.2d 286, 292 (1941) (citing Currier v. Studley, 159 Mass. 17, 33 N.E. 709, 711 (1893)). Because she already had title, she asserts, the Debtors had no interest in the land. We review this legal issue de novo. City of Springfield v. Ostrander (In re Lan Tamers, Inc.), 329 F.3d 204, 209 (1st Cir. 2003).
 
 
 27
 Section 541 of the Bankruptcy Code provides that upon the commencement of a bankruptcy case, an estate is created out of "all legal or equitable interests of the debtor," "wherever located and by whomever held." 11 U.S.C. § 541(a) (2000). What property interest the Debtors had at the commencement of the case is defined by Massachusetts law. Butner v. United States, 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). At the time of filing, the Debtors held record title to property and the right to contest Ragosa's undeclared adverse possession claim; the Debtors had an interest in property, albeit an encumbered interest.
 
 
 28
 To establish title by adverse possession in Massachusetts, a claimant must offer "proof of nonpermissive use which is actual, open, notorious, exclusive and adverse for twenty years." Ryan v. Stavros, 348 Mass. 251, 203 N.E.2d 85, 92 (1964).[5] Typically, a claim of adverse possession may be established in two ways. First, an adverse possessor may bring an action to claim title to the land. See, e.g., Lyon v. Parkinson, 330 Mass. 374, 113 N.E.2d 861, 863-64 (1953) (ruling that petitioners were entitled to register land acquired by adverse possession). Second, the claimant may assert adverse possession as a defense to a claim such as a writ of entry. 16 Richard R. Powell et al., Powell on Real Property § 91.13. Massachusetts law provides:
 
 
 29
 An action for the recovery of land shall be commenced, or an entry made thereon, only within twenty years after the right of action or of entry first accrued, or within twenty years after the demandant or the person making the entry, or those under whom they claim, have been seized or possessed of the premises....
 
 
 30
 Mass. Gen. Laws ch. 260, § 21. As the Bankruptcy Appellate Panel explained, although the time period is often described as the time necessary to achieve title by adverse possession, it actually is a limitations period, after which the true owner may not recover possession of the land from the adverse possessor. Lawrence v. Town of Concord, 439 Mass. 416, 788 N.E.2d 546, 553 (2003) (describing statutory period as the time the true owner has to bring claim to recover land).
 
 
 31
 Because Ragosa had not yet asserted her claim of adverse possession against the Debtors at the time they filed their bankruptcy petition, the extent of the Debtors' interest in the property at that time is indeterminate. However, the Debtors clearly held record title to the property. See 5 Collier on Bankruptcy ¶ 541.04 (Alan N. Resnick & Henry J. Sommer eds. 15 ed. rev.) ("The debtor's interest in property also includes `title' to property, which is considered an interest in property just as a possessory interest or a leasehold interest would be.").[6] Moreover, that title could be conveyed despite the occupancy of a potential adverse possessor:
 
 
 32
 A conveyance of land shall, if otherwise valid, notwithstanding disseisin or adverse possession, be as effectual to transfer the title of the grantor as if he were actually seized and possessed of such land, and shall vest in the grantee the rights of entry and of action for recovery of the estate incident to such title.
 
 
 33
 Mass. Gen. Laws ch. 183, § 7. The bankruptcy estate would succeed to the Debtors' right to bring a cause of action for the recovery of the land or the right to dispute Ragosa's claim of title by adverse possession. See Sender v. Buchanan (In re Hedged-Inves. Assocs., Inc.), 84 F.3d 1281, 1285 (10th Cir.1996) (holding that a bankruptcy estate includes causes of action belonging to the debtors at the time the petition is filed). If Ragosa could actually establish all the elements of adverse possession, the estate's cause of action would be subject to a statute of limitations defense. See Lawrence, 788 N.E.2d at 553 (the "statute of limitations to recover possession of land runs against the true owner after twenty years if the adverse possessor satisfies the elements of adverse possession."); 5 Collier on Bankruptcy ¶ 541.08 (trustee stands in the debtor's shoes; therefore the trustee would be subject to most defenses available against debtor). However, the possibility of a defense to a claim does not deprive the debtors of an interest in the land to which their estate could succeed and which the Chapter 7 trustee could sell. We therefore conclude that the Debtors had an interest in the property which became part of their bankruptcy estate.
 
 B.
 
 34
 The next question before us is whether Ragosa's claim of title by adverse possession, which she held upon the filing of the bankruptcy petition and which continued against the estate, survived the bankruptcy court's sale of the property pursuant to 11 U.S.C. § 363(f). Ragosa claims that her interest must have survived because her claim of title by adverse possession was not an "interest" within the meaning of § 363(f) and because she did not consent to the sale under § 363(f)(2); therefore, she contends that § 363(f) did not authorize the bankruptcy court to sell the property. We need not decide either of these issues because Ragosa's claim is barred due to her failure to assert her interest in the disputed parcel during the § 363 proceedings.
 
 
 35
 Under Massachusetts law, an adverse possessor's claim ordinarily is not extinguished by the record holder's conveyance of the title. See Harrison v. Dolan, 172 Mass. 395, 52 N.E. 513, 513 (1899) ("In general, also, the effect of the adverse possession will not be abridged by a change of title."). However, because Ragosa knew that the bankruptcy court was selling the disputed parcel—indeed, she participated in the sale—Ragosa's failure to object to the § 363 sale caused her to lose her claim.[7]
 
 
 36
 First, even outside the bankruptcy context, a person who knowingly stands by and allows her land to be sold without asserting her ownership rights waives her claim to the land. Emmons v. White, 58 Mass.App.Ct. 54, 788 N.E.2d 557, 563 (2003); accord Vincent v. Plecker, 319 Mass. 560, 67 N.E.2d 145, 146 (1946) ("If [defendant] had owned the two lots in question, and had knowingly permitted the plaintiff to buy them from the town, without disclosing her own title, doubtless she would be estopped to set up her title against him."); Looney v. Trimount Theatres, Inc., 282 Mass. 275, 184 N.E. 683, 685-86 (1933) (holding that defendant was estopped from asserting ownership interest in fixtures when defendant's agent referred buyer to a third party when asked who owned the fixtures); United Shoe Mach. Co. v. Bresnahan Shoe Mach. Co., 197 Mass. 206, 83 N.E. 412, 414 (1908) (approving of instruction stating that "if the plaintiff knew that this property was going to be sold and he wanted to exercise any further rights of ownership upon it, knowing that rights of other parties might intervene, it was his duty to do it within a reasonable time"). Ragosa is estopped from asserting her adverse possession claim under Massachusetts state law because she had notice that the bankruptcy court was selling land she claimed, yet participated in the auction without asserting her ownership rights.[8]
 
 
 37
 Second, in the context of a § 363 sale, Ragosa's failure to assert her claim was doubly inconsistent with her present position because she had notice through the sale motion, the sale notice, and the purchase and sale agreement that the property was being sold "free and clear of all liens, claims, and encumbrances" pursuant to § 363(f). Ragosa admits that she was present at the hearing selling the disputed parcel, was represented by counsel, and bid on the property, but did not file an objection or otherwise assert her alleged ownership interest. Ragosa's attorney conceded at oral argument that had she asserted her interest in the bankruptcy proceeding, it would have chilled the sale to the Canzanos. Regardless of the bankruptcy court's statutory authority to extinguish a claim of title by adverse possession if the claimant consents pursuant to § 363(f)(2), Ragosa knew that the bankruptcy court was purporting to release all third-party interests in the Debtors' land and that the Canzanos were relying on the free and clear sale. She affirmatively participated in that sale, thereby impliedly representing to the Canzanos that she was not challenging the sale. Therefore, she is estopped from now asserting that the court was without power to order the sale.
 
 
 38
 Ragosa argues that she should not be estopped from asserting her claim because the evidence does not support a finding of detrimental reliance. She asserts that because the Canzanos lived nearby and could see her allegedly adverse activities on the parcel, they could not have detrimentally relied on her actions in the bankruptcy case. This argument is misguided; a finding of detrimental reliance is based on the Canzanos' reliance upon Ragosa's apparent intent to waive her claim, not on whether they knew she ever had such a claim.
 
 
 39
 Ragosa also argues that she cannot be estopped in the present suit by her prior conduct in the bankruptcy action because she was acting in two different capacities in the two suits. She argues that she participated in the bankruptcy proceeding as a trustee rather than an individual, while in her adverse possession claim she is proceeding as an individual and not as a trustee. We are unpersuaded. Ragosa does not dispute that she personally had notice of and personally participated in the bankruptcy court proceedings. She cites no authority for the proposition that a trustee is entitled to ignore his or her own personal knowledge when acting as a trustee. Indeed, Ragosa's logic would defeat the very argument she asserts against the Canzanos. She says the Canzanos could not have detrimentally relied on her conduct in the bankruptcy proceeding because they lived nearby and must have seen her adversely possessing the land. The Canzanos purchased the property not in their individual capacities, but as trustees for J & B Realty Trust. By Ragosa's logic, any personal notice or knowledge the Canzanos may have had as individuals could not be imputed to them because they bought the land as trustees.
 
 
 40
 Finally, Ragosa cannot now challenge the bankruptcy court's power to sell the land pursuant to § 363(f) because she did not follow the correct procedures to do so. After the sale, Ragosa did not appeal the sale order or obtain a stay of the sale. Under 11 U.S.C. § 363(m),[9] a sale to a third-party purchaser acting in good faith[10] may not be reversed on appeal unless the aggrieved party obtains a stay of the sale. Anheuser-Busch, Inc. v. Miller (In re Stadium Mgmt. Corp.), 895 F.2d 845, 847 (1st Cir.1990). Without the stay, this court has no power to fashion a remedy because we cannot undo the sale, even if we were to find that the authorization was erroneous. Id. As we have held:
 
 
 41
 Section 363(m) does not say that the sale must be proper under § 363(b); it says the sale must be authorized under § 363(b). There is no doubt that when the bankruptcy court authorized the sale... it was acting under § 363(b). At this juncture, it matters not whether the authorization was correct or incorrect. The point is that the proper procedures must be followed to challenge an authorization under § 363(b).
 
 
 42
 Id. at 849 (quoting In re Sax, 796 F.2d 994, 997-98 (7th Cir.1986) (emphasis in original)); accord In re Continental Airlines, 91 F.3d 553, 570 (3d Cir.1996) ("Unless the sale is stayed pending appeal, the transaction survives even if it should not have been authorized in the first place").
 
 
 43
 While this case is a collateral attack rather than an appeal, the principle of finality embodied in § 363(m) still applies. This principle "reflects the salutary policy of affording finality to judgments approving sales in bankruptcy by protecting good faith purchasers, the innocent third parties who rely on the finality of bankruptcy judgments in making their offers and bids." Tri-Can, Inc. v. Fallon (In re Tri-Can, Inc.), 98 B.R. 609, 618 (Bankr. D.Mass.1989) (holding that § 363(m) only applies on its face to appeals; however, the finality policy it embodies applies in other circumstances). After the time for appeal had passed, the sale may only be challenged, if at all, in accordance with the provisions of Rule 60(b) of the Federal Rule of Civil Procedure. Matter of Edwards, 962 F.2d 641, 643 (7th Cir.1992); Fed. R. Bankr.P. 9024 (incorporating Fed. R.Civ.P. 60 to cases brought under Bankruptcy Code). Ragosa neither invokes Rule 60(b) nor makes an attempt to show that the requirements of Rule 60(b) have been met.
 
 
 44
 We hold that Ragosa cannot now challenge the sale order on the grounds that the bankruptcy court erred in approving the sale of the property to the Canzanos free and clear of her interest.
 
 
 45
 AFFIRMED.
 
 
 
 Notes:
 
 
 *
 Hon. John R. Gibson, of the Eighth Circuit, sitting by designation
 
 
 [1]
 The case was subsequently converted to a case under Chapter 11 and then to a case under Chapter 7
 
 
 [2]
 The record does not contain a purchase and sale agreement signed by Ragosa. However, we have a request from the Chapter 7 Trustee asking that all offerors use the same form and a statement that he would not file the sale motion until he received one from each offeror, as well as an agreement signed by another bidder. Our only evidence points to the conclusion that Ragosa signed the same purchase and sale agreement
 
 
 [3]
 The record does not reveal the claim Ragosa's husband asserted against the bankruptcy estate
 
 
 [4]
 Because Mr. McAuliffe's statements were not made under oath, they are not evidence and we recite them only to explain what was said and done at the hearing
 
 
 [5]
 Some cases suggest the claimant must also show the land is held under a claim of rightSee Lawrence v. Town of Concord, 439 Mass. 416, 788 N.E.2d 546, 551 n. 5 (2003)
 
 
 [6]
 Ragosa citesCity of Springfield v. Ostrander (In re Lan Tamers, Inc.), 329 F.3d 204, 212 (1st Cir.2003), as holding that legal title is exempted from the property of the estate under § 541. That case was not about the exclusion of legal title from an estate. Rather, the court held that federal reimbursement funds were not property of the estate because debtor was acting as mere delivery vehicle. Id. at 209-213. Ragosa's argument is contrary to the plain language of § 541(d), which states that:
 Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest ... becomes property of the estate ... only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.
 11 U.S.C. § 541(d) (2000).
 
 
 [7]
 We do not decide the question of what impact the sale would have if Ragosa never received notice of the sale. She admits she was on the service list in the proceeding and, at any rate, she participated in the sale as a bidder
 
 
 [8]
 This doctrine is based on the principle of equitable estoppel, which requires (1) a representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made; (2) an act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made; and (3) detriment to such person as a consequence of the act or omissionBoylston Dev. Group, Inc. v. 22 Boylston Street Corp., 412 Mass. 531, 591 N.E.2d 157, 163 (1992).
 
 
 [9]
 Section 363(m) provides:
 The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.
 
 
 [10]
 We observe that a stay is not required to challenge a sale on the ground that § 363(m) does not apply because the purchaser did not act in good faithIn re Sax, 796 F.2d 994, 997 n. 4 (7th Cir.1986). We have defined a good faith purchaser in the § 363(m) context as "one who buys property in good faith and for value, without knowledge of adverse claims." In re Mark Bell Furniture Warehouse, Inc., 992 F.2d 7, 8 (1st Cir.1993). The bankruptcy court found that the Canzanos were good faith purchasers. While the geographical proximity of the parties might suggest the Canzanos had notice of Ragosa's adverse possession claim, Ragosa did not appeal the bankruptcy court's finding that Canzanos were good faith purchasers; hence, this issue is not before us. See County Motors, Inc. v. General Motors Corp., 278 F.3d 40, 43 n. 1 (1st Cir.2002).