Fremont-Smith, Thayer, J.
In this case, the parties own neighboring parcels of land on Wildwood Street in Winchester. When, in 2002, the Galas sought to construct a driveway from Wildwood Street to the rear of their home, the Morans brought suit in the Land Court claiming a prescriptive right to that portion of the Gala property and obtained a preliminary injunction which prohibited the Galas from constructing the driveway, pendent lite. The Galas counterclaimed, alleging misrepresentation and violation of G.L.c. 93A. The Land Court, on March 4, 2005, entered summary judgment for the Galas, holding that the Morans were estopped from claiming a possessory right to that portion of Galas’ property. It severed and transferred Galas’ counterclaim to this Court. The Morans appealed to the Appeals Court which, in a detailed decision, affirmed the Land court.
The counterclaim was tried jury-waived in this Court on March 31 - April 2, 2008. Based on all of the credible evidence, the Court finds and rules as follows.
The gravamen of the Galas’ counterclaim is that Robert Moran, who represented the persons from whom the Galas purchased their property (the Stows) throughout the period leading to their real estate closing, took actions that led the Galas reasonably to believe that they would have clear title to all the land which they purchased.[1]
The Land Court, in ruling for the Galas in their motion for summary judgment, found as follows:
Moran, who asserts in this lawsuit ownership of the Galas’ record parcel, dealt with them repeatedly and extensively up to the point where they agreed to buy and then bought, in good faith and for full value, the Stowe/Moore property. Moran was indisputably aware of the full facts on which he now bases his adverse possession claim throughout the time he was dealing with the Galas. He never raised those facts of possession with the Galas. He even made a “proposal” in writing to the Galas to have them transfer to him and his wife the land he now claims he owns by possession, and yet he never once communicated his claim or any of the facts underlying them to the Galas, not even when they declined his “proposal” and then bought the house from Moran’s clients, blindly placing themselves in a position to be sued by the Morans in the instant case, as they now have been.
It is undisputed that Robert Moran, acting as attorney-in-fact under power of attorney, signed the Mechanic’s Lien Certificate, which clearly attests, on behalf of his clients, the sellers, that “there are no tenants, lessees or parties in possession of said premises other than _.” The Galas, for the benefit of whose title insurer the certificate was procured, reasonably relied upon this representation.[2]
Moran v. Gala, Misc. No. 266795 (Land Ct., Middlesex Jan. 6, 2005) (Piper, J.) (Order granting summary judgment of Galas p. 10-11). The Land Court went on to say:
To establish equitable estoppel, one must show a representation “intended to induce reliance on the part of a person to whom the representation is made.” Bongaards, 440 Mass. at 15. Moran should be estopped by the position communicated by the Mechanic’s Lien Certificate, which he executed on behalf of his clients as their attorney. He could be expected to argue that this certificate was addressed to, and intended to induce reliance by, First American, rather than the Galas. Although true, the court does not attribute to this distinction any legal significance so as to defeat the defense of estoppel. The record is clear that the certificate was supplied to induce the issuance of title insurance for the Galas and/or their purchase money mortgagee. The conveyance would have collapsed had the Galas been unable to secure title insurance. The practical effect of the Mechanic’s Lien Certificate was to facilitate the Galas’ ability to insure their title, and thus to enable them to purchase the property from Moore and Stowe. The statements contained in the Mechanic’s Lien Certificate were intended to induce reliance by the Galas, even if the statements were not, strictly speaking, representations made directly to the Galas by name.[3]
The Appeals Court, in Moran v. Gala, 66 Mass.App.Ct. 135, 139 (2006), after reviewing the *731 summary judgment record before the Land Court, quoted from Bongaards v. Millen, 440 Mass. 10, 15 (2003), as follows: “Circumstances that may give rise to an estoppel are (1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission.” The Court continued (at 139-40):
The judge considered that the position and assertions of the Morans in the present lawsuit — that Robert and his predecessors in title possessed the disputed area of the Galas’ record parcel since 1942 — "squarely contradict" the position he took as counsel for and as a representative of the sellers in 1997. Although the Morans contest this conclusion, it is supported by undisputed facts, Throughout the period leading to the final closing, Robert took actions that would lead the Galas reasonably to believe that they would have title to all the land described first in the purchase and sale agreement, and then in the deed. Moreover, Robert’s proposed adjustment to the boundaries would reasonably be viewed as an acknowledgment of the boundaries as described in the Stowe and Moran deeds, and his desire to change the boundaries by a conveyance. Thus, even apart from the mechanic’s lien certificate, the Galas reasonably could rely on the description in the purchase and sale agreement and deed, documents prepared by Robert or under his direction, and Robert’s proposed lot adjustment, as an implicit representation by him that he was not asserting a claim contrary to the descriptions in the documents he prepared. At the very least his conduct was an implicit representation that, based on facts that Robert knew at the time (it is irrelevant whether he knew such facts might constitute a viable claim of adverse possession), Robert and his wife were making no claim and would make no claim to the Galas’ record title properly. Obviously, had the Galas any inkling that the Morans would make a claim, they would have not gone through with the purchase without some adjustment or release. Also obvious is the detriment to the Galas— the cost and trouble of this litigation, as well as the possible loss of a portion of their land.
The Court continued (at 140-41):
In their appeal, the Morans argue that summaiy judgment should not have entered as there were disputed material questions of fact. Robert argues that the Galas had already decided to purchase the property when he began to be involved in the transaction and therefore there was no reliance by them which led them to buy the property. At the least, he claims, whether they were induced to buy is a question of fact. What is here involved is not the inducement to enter into the purchase and sale agreement, but rather reliance on the implicit representations that Robert would not assert claims on his own and on his wife’s behalf contrary to the documents he prepared. See Colarusso v. Ragosa, 382 F.3d 51, 61 (1st Cir. 2004). In that case, an unsuccessful bidder at an auction sale ordered by the bankruptcy court was estopped from asserting a claim of adverse possession against the successful purchaser at the sale. The court held that the participant, knowing that the bankruptcy court was purporting to release all third party interests, implicitly represented to the purchaser that she was not challenging the sale. Ibid. Although the question of reliance is often a question of fact, in an appropriate case it can, as here, present an issue of law. See Cataldo Ambulance Serv., Inc. v. Chelsea, 426 Mass. 383, 387 (1998).
The Appeals Court did point out that,
While the doctrine of estoppel in pais rests upon the ground of fraud, it is not essential that the representations or conduct giving rise to its application should be fraudulent in the strictly legal significance of that term, or with intent to mislead or deceive; the test appears to be whether in all the circumstances of the case conscience and duly of honest dealing should deny one the right to repudiate the consequences of his representations or conduct. . .
Moran, 66 Mass.App.Ct. at 141, quoting McLearn v. Hill, 276 Mass. 519, 525 (1931).
Still, the clear import of the findings of the Land Court and Appeals Court is their finding that Moran acted with dishonest intent so as to deceive the Galas with respect to his intention to assert a possessory right in a portion of Galas’ property should the need arise.
In this regard, the Court noted at n. 11:
As a member of the bar, and acting in that role (as well as for his own benefit, e.g., the adjustment proposal), Moran had at the very least this duly of honest dealing. That he was acting in different capacities in the two proceedings is not relevant. Moran cannot dispute that he had notice of and, indeed, prepared the deeds. See Colarusso v. Ragosa, 382 F.3d at 61.
Am I bound by these findings of the Land Court and Appeals Court? Federal and state courts have held overwhelmingly that a summary judgment order is a binding adjudication of a claim when it is based on a court’s determination that no genuine dispute exists as to any material fact and that a moving party is entitled to judgment as matter of law. Wright Machine Corp. v. Seaman-Andwall Corp., 364 Mass. 683, 693 (1974). “When a summary judgment is based on such a determination it must be given res judicata effect in any subsequent proceeding involving the same parties and the same claim.” Id. See Stokke v. Southern Pac. Co., 169 F.2d 42, 43 (10th Cir. 1948); Small Business Adm’n. v. Taubman, 459 F.2d 991, 992 (9th Cir. 1972); *732 see also Fluhr v. Allstate Insurance Company, 15 Mass.App.Ct. 983, 984 (1983); Associated General Contractors of Mass. v. Boston District Council of Carpenters, 642 F.Sup. 1435, 1439 (D.Mass. 1986) (“For res judicata purposes, summary judgment constitutes a final judgment on the merits”). It only requires “proof that‘(1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom estoppel is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication is identical to the issue in the current adjudication. Additionally, the issue decided in the prior adjudication must have been essential to the earlier judgment.” TLT Construction Corp. v. A. Anthony Tappe and Assoc., Inc., 48 Mass.App.Ct. 1, 5 (1999), quoting Commissioner of the Dept. of Employment & Training v. Dugan, 428 Mass. 138, 142 (1998). “The doctrine of claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and bars further litigation of all matters that were or should have been adjudicated in the action.” Heacock v. Heacock, 402 Mass. 21, 23 (1988); TLT Construction Corp. v. A. Anthony Tappe and Assoc., Inc., supra at 4.[4]
I am also bound by the Appeals Court’s findings on the issue of whether Susan is legally responsible for her husband’s wrongful conduct, i.e., whether he acted as her agent in misleading the Galas. In this regard, the Appeals Court found (at 141-42):
Morans also claim that it would be inequitable for Susan to be bound by Robert’s conduct as there is no evidence that Robert was acting as her agent, the whole record, however, is replete with evidence that although the parties took title in the names of Robert C. Moran and Susan Moran, Robert had full control of the property and made all decisions and signed all papers concerning it. Susan acknowledged in response to requests for admissions by the Galas that [b]y 1994, Susan . . . desired to change the lot lines between the Moran and Stowe properties which would have added more land to the Moran property from a portion of the Stowe property. The adjustment plan proposed by Robert to the Galas was in accord with this desire. She knew that the property had been in Robert’s family and that Robert, and not she, knew far more about the property, and her actions indicate she was not asserting any claims or defenses independently of Robert. He signed the complaint in this action. Even the application for a special permit made in 1994 was sought by Robert in his own name. While the application for a building permit was in both names, it was signed by Robert alone.
Accordingly, I am constrained to conclude that the Morans intentionally deceived the Galas regarding Robert Moran’s intention to the Galas’ detriment, and that such misrepresentation also constitutes a violation of G.L.c. 93A.
I do not find, however, that Moran’s intention to assert a claim of ownership in the Galas’ property was unconditional or fully conscious or premeditated. Rather, I find that it was his intention to resort to this expedient only if he could not get his way by other means, such as his proposal to have the lot boundary lines altered by agreement. At bottom, however, his conduct, as found by the Land and Appeals Courts, was deceptive and less than completely honest.
What are the Galas’ damages? The Appeals Court found, as noted above, that “also obvious is the detriment to the Galas — the cost and trouble of this litigation, as well as the possible loss of a portion of their land.” Moran, 66 Mass.App.Ct. at 140.
At trial, the Galas proved they had incurred $155,578.43 in attorney fees, which amount I find to be fair and reasonable under the factors enunciated by the Supreme Judicial Court.[5]
In addition, the Galas were deprived of their family’s use and enjoyment of that portion of their land for six years, for which I award an additional $10,000, and incurred an additional expense of $2,850 to construct the driveway.

ORDER FOR JUDGMENT

Accordingly, the Court ORDERS that final judgment shall enter on the counterclaim[6] for Alberto M. Gala and Maiy J. Gala against Robert C. Moran and Susan Moran in the sum of $167,428.43 plus interest and costs.

Moran is an attorney who acted as the sellers’ counsel in connection with the sale of their home to the Galas.

The Appeals Court said, in this regard:
Since the mechanic’s lien certificate was supplied to induce the issuance of title insurance for the Galas and their purchase mortgagee, the fact that it was addressed to the title insurance company, rather than to the Galas, is without significance. The certificate facilitated the Galas’ ability to insure their title and consummate the purchase.
Moran v. Gala, 66 Mass.App.Ct. at 140 n.10.

Order granting motion for summary judgment, p. 11, n.2.

This being the case, Moran’s citation to Security Title and Guaranty Co. v. Mid-Capt Realty, Inc., 723 F.2d 150 (1983), for the proposition that a seller of real estate and his attorney are not obligated to disclose an unrecorded, latent cloud on the title, where no affirmative misrepresentation has been made, is inapposite. Here, as found by the Land and Appeals courts, Moran did engage in affirmative misleading conduct. See Net v. Burley, 388 Mass. 307, 317 (1983).

Although the attorney fees were paid and/or reimbursed by the title insurer, the “collateral source doctrine” indicates that they are costs for which the Morans are responsible, regardless of whether the title insurer defrayed them. See: Bangert v. Beeler, 470 So.2d 817, 818 (D.C.Fla. 1985). I express no opinion as to whether the insurer can, in turn, recover a part or all of them from the Galas.
I award these fees as damages for both misrepresentation and under c. 93A. I will make no separate award of damages under c. 93A, §9(4), as this would, in the circumstances, be duplicative. Nor does the Court consider Robert Moran’s actions to have been so malicious or premeditated as to warrant punitive damages.

The counterclaim is all that survives in the case.